UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRIUS SUTTLES,

       Plaintiff,

    v.

VINCENT BUTLER and JUAN
RESTREPO, in their individual
capacities,

       Defendants.

CIVIL ACTION NO.
1:19-cv-02409-JPB

## **ORDER**

This matter is before the Court on Defendants Vincent Butler ("Butler") and

Juan Restrepo's ("Restrepo") (collectively "Defendants") Motion for Partial

Summary Judgment ("Motion").  ECF No. 57.  Having reviewed and fully

considered the papers filed therewith, the Court finds as follows:

## I.    **BACKGROUND**

Plaintiff Darius Suttles ("Suttles") filed a complaint against Defendants

alleging Fourth Amendment violations and state law assault and battery claims in

connection with his arrest by Atlanta Police Department Officer Butler in May

2017 and by Officers Butler and Restrepo in December 2017 ("December Arrest").[1]  The relevant facts surrounding the December Arrest follow.[2]

On the day of the December Arrest, Suttles was walking along Mitchell Street in downtown Atlanta as Butler and Restrepo drove by in Butler's patrol car. Butler stopped the car, and Butler and Restrepo exited and walked toward Suttles. At this point, Suttles was standing alongside parked cars on one side of the street.

Butler directed Suttles to the patrol car and asked him to put his hands on the car.  Suttles complied.  As Butler moved Suttles' left hand off the car and in the direction of Suttles' back, Suttles jerked away and started running down the street.

Butler chased Suttles and yelled that he was about to tase Suttles.  Suttles did not stop.  Suttles continued to run and subsequently turned right into a nearby

---

[1] The instant Motion concerns only the December Arrest.

[2] Key facts are corroborated by video recordings, including from Butler's body camera.  The facts set forth herein are thus described as depicted by the video recordings where possible.  *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (The Court "should . . . view[] the facts in the light depicted by the videotape" rather than rely on a party's version of the facts that is discredited by the record.). Evidence not depicted on camera is presented in the light most favorable to Suttles. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("At summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances."); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (stating that in evaluating a summary judgment motion based on qualified immunity, the court is "required to resolve all issues of material fact in favor of the plaintiff").

alley.  As he made the turn, he tripped and fell.  Butler discharged his taser gun

while chasing Suttles, but the taser was ineffective due to Suttles' clothing.  Suttles

took roughly fifteen to twenty steps from the time he started running to when he

fell, and this sequence of events lasted around nine seconds.

Butler and Restrepo approached Suttles, who was now lying face-up on the

ground.  Butler immediately grabbed Suttles' right arm while Restrepo grabbed

Suttles' left arm and began moving it behind Suttles' back.  At the same time, the

officers can be heard instructing Suttles three times to turn around.  In a continuous

motion, Butler and Restrepo picked Suttles up and pinned him against an adjacent

fence.  Suttles immediately exclaimed that his arm was broken.  Suttles was placed

against the fence within approximately eight seconds of when Restrepo first

grabbed his arm, and the entire sequence of events, from the point at which Suttles

took flight to when he was placed against the fence, lasted only twenty-two

seconds.

As the officers worked to handcuff Suttles, he continued to scream in pain

and tell Defendants that his arm hurt.  Butler made several comments to Suttles

during this time, including denying Suttles' claim that Butler broke his arm and

telling Suttles that instead he hurt himself when he fell.  Butler also asked Suttles

to explain why he ran.  In response to Suttles' outcry that "this . . . hurts," Butler

3

told Suttles to "shut up" and that "it's supposed to hurt."  Suttles continued to scream in pain.  He was eventually handcuffed and walked back to where the police car was parked.

Butler first acknowledged that Suttles' arm "might be" broken approximately two- and one-half minutes after Suttles first exclaimed that it was. About twenty seconds later, Restrepo told Suttles that an ambulance was on the way.

Suttles was diagnosed with a broken humerus bone in his left arm.  He broke the same arm in a bicycle accident when he was a child, and the arm healed improperly, which caused mobility issues in the arm.  Suttles testified that he had no reason to believe that Restrepo was aware of the pre-existing condition in Suttles' arm.

The parties dispute certain facts regarding what caused Suttles' arm to break. There is no dispute that Restrepo is trained in martial arts and that he used a martial arts technique called a "kimura" or "keylock" to get Suttles' arm behind his back.

However, Suttles contends that Restrepo "violently crank[ed]" Suttles' arm until it broke and that Suttles would not have known to "tap out" of the kimura before his arm was broken as is customary in martial arts.  Suttles' Br. 19-20, ECF

No. 65.  He further states the he could not have done so, in any event, because Butler had immobilized Suttles' other arm.

Neither Restrepo's testimony nor Butler's body camera reflects that Restrepo was waiting for Suttles to "tap out" before releasing Suttles' arm.  The rapid sequence of events belies this version of the facts, and Restrepo testified that his "focus was getting [Suttle's] arm behind his back so that [the officers] could start the handcuffing procedure."  Restrepo Tr. 60:7-11, ECF No. 63.  Restrepo also testified that he used the maneuver because he "thought it would be the safest, easiest way to get an arm isolated for Officer Butler to then start . . . handcuffing" Suttles.  *Id*. 57:5-13.  He reiterated that "you don't ever crank [an arm while in a kimura lock] to the point of hurting someone."  *Id*. 57:2-4.  For the purposes of deciding this Motion, however, the Court need not resolve these questions.

In a nutshell, Suttles' Complaint alleges that Defendants falsely arrested him for jaywalking or obstruction and used excessive force in making the arrest. Defendants seek dismissal of Suttles' federal claims on qualified immunity grounds because they argue that the arrest was lawful, the use of force was either incident to the arrest (*de minimis*) or reasonable and Suttles failed to provide clearly established law that his constitutional rights had been violated.

Defendants seek dismissal of Suttles' state law claims on the grounds of official immunity because they argue that Suttles cannot show the requisite intent to cause harm.

## II.   **DISCUSSION**

### A.   **Legal Standard**

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted).  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court . . . is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

Also, "[w]hen the nonmovant has testified to events, [the court] do[es] not . . . pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) . . . . Instead, when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). As the Eleventh Circuit Court of Appeals has summarized, "Federal Rule of Civil Procedure 56 and countless decisions applying it express the modern rule that a case should be put to the jury if there is any genuine issue of

material fact, including one created solely by the testimony of a party." *Feliciano*, 707 F.3d at 1247. *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("Our case law recognizes that, even in the absence of [corroborative] evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment.").

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). For example, the Court should view the facts as depicted by available video recordings rather than accept plainly contradictory facts. *See id.* at 380–81.

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## B.   <u>Analysis</u>

The doctrine of qualified immunity protects government officials from civil liability as long as they were acting within the scope of their discretionary authority and unless their conduct violated the plaintiff's federal constitutional

rights as demonstrated by clearly established law.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  "The defense of qualified immunity aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  *Taylor v. Taylor*, 649 F. App'x 737, 742 (11th Cir. 2016).  The burden is on the defendant to raise the defense, and once the defendant meets the burden, the burden shifts to the plaintiff to show that qualified immunity should not apply.  *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

Courts in the Eleventh Circuit "conduct a two-step inquiry to decide whether qualified immunity should be granted:  (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[?]; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, … [was] the right . . . clearly established[?]"  *Shuford v. Conway*, 666 F. App'x 811, 815 (11th Cir. 2016).

"'Both elements must be satisfied for an official to lose qualified immunity.'"  *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).  However, "the two steps do not have to be analyzed sequentially."  *Id*.  If the law was not clearly established, the court need not decide if the defendant actually

violated the plaintiff's rights, although the court is permitted to do so. *See id.*;

*Maughon v. City of Covington*, 505 F. App'x 818, 821 (11th Cir. 2013) (stating

that "[the court] need not conduct [the] qualified immunity analysis in any specific

order; rather, [the court is] permitted to exercise [its] sound discretion in deciding

which prong of [the] inquiry to address first").

With these principles in mind, the Court turns to the substance of Suttles'

Fourth Amendment claims relating to the December Arrest.

### 1.      Fourth Amendment Unlawful Seizure (Count III)

Suttles claims that he was arrested without arguable probable cause in

violation of the Fourth Amendment.

Defendants contend that Suttles' unlawful seizure claim should be dismissed

on qualified immunity grounds because Defendants were acting within the scope of

their discretionary authority and did not violate Suttles' constitutional right. They

also assert that Suttles has failed to show that the alleged constitutional right was

clearly established at the time of the incident.

Since Suttles does not dispute that Defendants were acting within the scope

of their discretionary authority, the burden shifts to him to show that qualified

immunity is inappropriate here. *See Lewis*, 561 F.3d at 1291. To evaluate whether

Suttles has satisfied his burden in this regard, the Court first turns to the second prong of the qualified immunity test (clearly established law).

### a. Whether the law was clearly established at the time of the incident

Even where an officer is found to have violated a plaintiff's Fourth Amendment right, the doctrine of qualified immunity will bar recovery unless the plaintiff can show that the violated right was clearly established at the time of the incident. *See Smith v. LePage*, 834 F.3d 1285, 1297 (11th Cir. 2016). Thus, the plaintiff must show that at the time of the officer's conduct, the law was clear such that every reasonable official would have understood that the conduct would be unlawful under the circumstances. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). In other words, "existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal citation and punctuation omitted).

To that end, the Supreme Court of the United States has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id*. at 590 (citation omitted). "It is not enough that the rule is suggested by then-existing precedent. The

precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.  "In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause." *Id*. (alterations in original; punctuation and citation omitted).

A plaintiff demonstrates the requisite rule by citing "'(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *See Smith*, 834 F.3d at 1297.  When relying on case law, a "close factual fit between the pre-existing case and the present one is essential," and "[g]eneral propositions from earlier decisions will not do." *Cantu v. City of Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020).  This is "'especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id*.

Without close fitting case law, a plaintiff can clear the clearly established law hurdle by showing that "'the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct

was readily apparent to the official.'"[3]  *Id*.  Put differently, the plaintiff must demonstrate that "the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point."  *Id*. (citation omitted).  The key is whether the defendant had "fair warning" at the time he engaged in the violative conduct that his actions were unconstitutional.  *Id*.

Here, Suttles has made no effort to satisfy his burden with respect to the clearly established law prong of the qualified immunity test.  Instead, his rebuttal to Defendants' Motion focuses entirely on the argument that disputed facts preclude summary judgment.

Specifically, Suttles argues that there are disputed material facts as to whether Defendants had arguable probable cause to arrest him, and he challenges Defendants' position that the lower arguable reasonable suspicion standard applies here.  Absent from his brief is any discussion of precedent that would have made it "sufficiently clear" to Defendants or that "obviously" would have resolved whether an arrest under the specific circumstances of this case would violate the Fourth Amendment.  *Wesby*, 138 S. Ct. at 589.

---

[3] This is referred to as the "obvious clarity" exception.  *Cantu*, 974 F.3d at 1233.

Suttles also has not argued that Defendants' conduct in arresting him was so egregious that Defendants clearly violated his Fourth Amendment right, even in the absence of case law indicating so.  Providing clearly established law—whether under the close factual fit or obvious clarity standard—is necessary to defeat Defendants' qualified immunity defense.  Suttles' failure to satisfy this requirement is fatal to his claim.[4]

To the extent Suttles contends that his unrelated discussion of *Glenn v. State*, 849 S.E.2d 409 (Ga. 2020), and *Merenda v. Tabor*, 506 Fed. App'x 862 (11th Cir. 2013), provides examples of applicable clearly established law, those cases do not control here.  Both opinions are inapposite:  *Glenn* concerned an arrest for loitering and prowling, 849 S.E.2d at 413, and *Merenda* involved an arrest for disorderly conduct, 506 Fed. App'x 862, 865-66.  Glenn was also decided three years after the incident at issue here, so it has little probative value for the purposes of demonstrating clearly established law in this case.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Because the focus [of the clearly established law inquiry] is

---

[4] Suttles has also arguably waived his claim by not addressing the clearly established law prong of the qualified immunity defense.  It is well-settled that the onus is on the party opposing summary judgment to formulate arguments in support of his position, *see Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013), and that "the failure to make arguments and cite authorities in support of an issue waives it," *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).

on whether [an] officer had fair notice that [the] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.").

For all these reasons, the Court finds that Defendants are entitled to qualified immunity with respect to Suttles' unlawful seizure claim.  Defendants' Motion as to Count III of the Complaint is therefore **GRANTED**.

### 2. Fourth Amendment Excessive Force Claim (Count IV)[5]

With respect to Suttles' excessive force claim, Defendants similarly assert the qualified immunity defense.[6]  They argue that they did not use excessive force to effectuate the arrest because they "simply grabbed hold of Suttles's arms as he was flailing on the ground—after he had just fled from the officers' lawful *Terry* stop."  Defendants' Br. 18-19, ECF No. 57-2.  They explain that they "stood

---

[5] "An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force . . . in effecting an otherwise lawful arrest.  When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."  *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1331–32 (11th Cir. 2006).  Therefore, the Court's analysis of the excessive force claim does not depend on whether the December Arrest was lawful.

[6] Suttles consents to the entry of summary judgment for Butler on the excessive force claim because Butler could be liable only for failure to intervene, and Suttles concedes that Butler did not have the opportunity to do so.  Suttles' Br. 18, n.16, ECF No. 65.

[Suttles] up, maneuvered him to the fence, and pinned him against the fence as they further struggled to secure his arms behind his back." *Id*.  Defendants further claim that Suttles' resistance was "active" and "strenuous." *Id*.  In their view, the amount of force they used was therefore necessary and did not violate the law.

Alternatively, Defendants contend that the force used was reasonable and not excessive under the circumstances.  They also assert that Suttles has not cited clearly established, materially similar case law that indicates Defendants' conduct was wrongful at the time of the arrest.

Suttles, on the other hand, focuses primarily on the material facts he asserts are disputed.  He contends that once he fell to the ground, "[h]e offered no further resistance of any kind from that point forward."  Suttles' Br. 4, ECF No. 65.  Suttles states that, rather, he rolled over onto his back and held up his hands "in a sign of surrender."  Suttles Decl. ¶ 10, ECF No. 65-3.  He concludes that the *de minimis* principle does not apply, and Defendants' use of force was excessive because he did not commit a crime, there is no evidence he posed a threat to Defendants and he was not resisting arrest at the time Restrepo broke his arm.

16

As set forth above, the video recording shows[7] that after Suttles fell to the ground, he rolled over onto his back, and Butler and Restrepo immediately took hold of him.  Butler grabbed Suttles' right arm while Restrepo grabbed his left arm and began moving it behind his back.  Both officers then lifted Suttles in a continuing motion and pinned him against the adjacent fence.  Only approximately eight seconds elapsed between when Suttles fell to the ground and when he was pinned against the fence.

The video does not show Suttles raising his hands in surrender.  Even if the Court construes Suttles' rolling over onto his back, which reflexively brought his hands away from the ground, as his intent to indicate surrender, there is no evidence on the video or otherwise in the record that Defendants interpreted or understood this action in this way—in the split second heat of the moment.

### a.   Whether the use of force was *de minimis*

"Determining whether the force used in a particular seizure was excessive and therefore unreasonable under the Fourth Amendment requires a court to consider the 'nature and quality' of the intrusion on the individual's Fourth Amendment interests against the countervailing government interest at stake."

---

[7] In accordance with *Scott*, 550 U.S. at 380–81, the Court relies on the video evidence for the purposes of ruling on this Motion, especially where the parties' contentions are contradicted by the recording.

*Cantu*, 974 F.3d at 1228-29.  However, as the Supreme Court has explained, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Therefore,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (internal punctuation and citation omitted).

For example, in *Taylor*, the Eleventh Circuit found it was not unreasonable for the officer to grab a resisting plaintiff without warning and slam her headfirst against a patrol car several feet away prior to handcuffing her.  649 F. App'x at 746.  The court reasoned that this "'Circuit has recognized that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense.'"  *Id*. (citation omitted) This level of force is referred to as "*de minimis*."  *Id*.  It is insufficient to support an excessive force claim and is lawful even when the use of force was unnecessary. *Id*.

Applying the reasoning of these cases here, the Court finds that the level of force Defendants used was *de minimis*.  The incident was rapidly evolving, and

Suttles had just fled from Butler and refused to stop even after Butler threatened to tase him.  Defendants moved quickly to secure and handcuff Suttles after he fell. Restrepo held Suttles' arm for only a few seconds after he fell and only until the officers were able to place him against the fence and handcuff him.  This process lasted approximately eight seconds.  Therefore, the force used was "necessary and altogether lawful," *id.*, and is insufficient to support a claim for excessive force. *See Horn v. Barron*, 720 F. App'x 557, 563–64 (11th Cir. 2018) (finding that the force used was *de minimis* because (i) even assuming that the plaintiff was "totally compliant," the officer was allowed to use some force in effecting the arrest; and (ii) even if the force applied was unnecessary, it was not unlawful, since the plaintiff was not restrained at the time").

In light of the very short lapse of time between Suttles' fall and when Defendants pinned him against the fence, Suttles' contention that he raised his hands up in surrender after he fell does not change the analysis.  The Court allows for the fact that Defendants had to make quick decisions regarding how to handle a suspect who had fled arrest.  *See Graham*, 490 U.S. at 396.  The Court is not persuaded that Defendants acted unreasonably in the fluid situation and compressed timeframe in which the incident occurred.

Contrary to Suttles' argument, the denial of summary judgment in *Patel v. City of Madison*, 959 F.3d 1330, 1344 (11th Cir. 2020), does not require a different result here.  In that case, the Eleventh Circuit found that the district court properly rejected the officer's qualified immunity defense, where the non-resisting plaintiff, an elderly man weighing only 115 pounds, was taken to the ground by a much larger officer in a manner that "all but ensured" that the plaintiff's head would break both his and the officer's falls.  *Id*. at 1339.  That case is clearly inapposite because, among other things, Suttles had just resisted arrest by fleeing from the officers.

In all, because the Court finds that the level of force used in this case was *de minimis*, it cannot support a claim for excessive force in violation of the Fourth Amendment.[8]

### b.    Whether the use of force was reasonable

In determining whether the force used in a particular case was proper, courts evaluate the reasonableness of the force "'from the perspective of the reasonable

---

[8] The Court notes that "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." *Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002) (finding that an officer was entitled to qualified immunity, even though the complications from the plaintiff's injury and preexisting condition ultimately resulted in the amputation of the plaintiff's arm).

officer on the scene' without the benefit of hindsight." *Fils*, 647 F.3d at 1287.  As

such, reasonableness "is not capable of precise definition or mechanical application

[and] its proper application requires careful attention to the facts and circumstances

of each particular case." *Graham*, 490 U.S. at 396.

Key factors used to determine whether the force used in a particular case

was reasonable are "'the severity of the crime at issue, whether the suspect pose[d]

an immediate threat to the safety of the officers or others, and whether he [was]

actively resisting arrest or attempting to evade arrest by flight.'" *Smith*, 834 F.3d

at 1294.  Courts also sometimes assess the need for force to be applied; the amount

of force applied in light of the nature of the need; and the severity of the injury.

*See, e.g.*, *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019).  Regardless,

Eleventh Circuit decisions "'demonstrate that the point at which a suspect is

handcuffed and poses no risk of danger to the officer is often the pivotal point for

excessive force claims.'" *Scott v. Battle*, 688 F. App'x 674, 677 (11th Cir. 2017).

In this case, the record is undisputed that the crimes for which Suttles was

arrested (jaywalking and obstruction) are misdemeanors.  Defendants also do not

claim that Suttles was a threat to them or anyone else, and they do not rebut

Suttles' argument to the contrary.

On the other hand, the record is undisputed that Suttles was attempting to evade arrest by flight.  He jerked away from Butler as Butler tried to handcuff him, ran approximately fifteen to twenty steps down the street and made a right turn into an alley.  He stopped only when he fell as he entered the alley, and Defendants immediately secured and handcuffed him.  The entire flight and arrest lasted only twenty-two seconds.  The nature and sequence of these events support the conclusion that Defendants used the amount of force necessary to effectuate the arrest and nothing more.

Even accepting for the purposes of this Motion that Suttles had his hands up in surrender as he lay on the ground after the fall, there was no delay between this gesture and when Defendants secured and pinned him against the fence.  The question then is "'whether the officers['] actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them'" or, alternatively, "whether the force used was reasonable [when] viewed from the perspective of a 'reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Hall v. McGhee*, 762 F. App'x 837, 841 (11th Cir. 2019).  The Court cannot conclude that a reasonable officer confronting the rapid sequence of events that occurred would have processed Suttles' far from unequivocal action as acquiescence.  *See Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (stating that "'qualified immunity

applies unless application of the standard would inevitably lead every reasonable officer in [the defendant's position] to conclude the force was unlawful'" (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994))).  Therefore, Suttles' belated acquiescence attempt is not sufficient to convert the force used to secure him from reasonable force to unreasonable force.

While it is unfortunate that Suttles suffered a broken arm in this encounter, the severity of his injury cannot tip the scales of the Court's analysis in his favor. It is undisputed that Restrepo had no knowledge of Suttles' preexisting condition, and as the Eleventh Circuit stated in *Lee*, "ordinary, reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." 284 F.3d at 1200.

In all, viewing the evidence in the light most favorable to Suttles, the Court finds that the level of force Defendants used in arresting Suttles was objectively reasonable under the Fourth Amendment.  Therefore, Defendants are entitled to qualified immunity on Suttles' excessive force claim.  Although this finding is sufficient to dispose of the excessive force claim, the Court will nevertheless

proceed to the second prong of the qualified immunity test as additional support for its finding that the defense applies here.

### c.   Whether the law was clearly established at the time of the incident

As set forth above, a plaintiff can satisfy the second prong of the qualified immunity test by citing to either case law with indistinguishable facts or a broad principle within the Constitution, statute or applicable case law. *See Wesby*, 138 S. Ct. at 589. A plaintiff can also argue that the defendant's conduct was so egregious that it violated the plaintiff's rights, even in the absence of supporting case law. *See id*.

Here, Suttles points to *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), as closely fitting, controlling case law. In that case, the plaintiff (Smith) was holding a baseball bat while sitting with several family members at a picnic table in the front yard of his mother's house, when an officer, who was conducting a sting drug operation, entered the yard. *Id*. at 1417. Smith raised the bat in a threatening way, and the officer drew his weapon and ordered Smith to drop the bat. *Id*. at 1417-18. Smith did not. *Id*. at 1418. After the officer threatened to shoot Smith, he dropped the bat and ran away. *Id*. He eventually came back and "docilely submitted" to his arrest. *Id*. The officer placed his knee on Smith's back, once Smith was on the ground. Smith complained of pain as his hands were being handcuffed behind his

back, and the officer responded by breaking Smith's arm "with a grunt and a blow." *Id.*

Explaining that the decision was "very close," *id.* at 1419, the Court concluded that the "considerable effort and force inferable from the grunt" and Smith's sensation of a blow were "obviously unnecessary to restrain even a previously fractious arrestee," who "was offering no resistance *at all*," *id.* at 1420.

Thus, even under Suttles' version of the facts, the circumstances of his injury do not bear sufficient resemblance to those underlying Smith's. For example, unlike Smith, Suttles had not "docilely submitted" to arrest and rather stopped running only after he tripped and fell.

Additionally, Suttles did not complain about Restrepo's conduct, only for Restrepo to respond with additional force and break Suttles' arm. The *Smith* court made clear that it considered the blow and the force inferable from the officer's grunt as important in deciding the "very close case" in Smith's favor. *See id.* at 1419-20. Accordingly, the facts in *Smith* are distinguishable from those at bar and cannot provide the "close factual fit" necessary to answer the clearly established law question in this case. *See* Cantu, 974 F.3d at 1232.

Likewise, Suttles' reliance on *Merricks v. Adkisson*, 785 F.3d 553, 563 (11th Cir. 2015), and *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), is

misplaced.  In *Merricks*, which involved a traffic stop, the court found that the officer, who yanked the plaintiff out of her car during a traffic stop, was entitled to qualified immunity because the plaintiff resisted a search of her car and could have driven off, resulting in a dangerous high-speed chase.  785 F.3d at 562.  In *Hadley*, the plaintiff was "handcuffed" and "non-resisting," 526 F.3d at 1333, when the officer punched him in the stomach, *id*. at 1330.  There, the court held that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  *Id*. at 1330.

Setting aside the obvious fact that qualified immunity was ***granted*** to the officer in *Merrick*, neither case is factually similar to Suttle's circumstances.  Importantly, the plaintiff in *Hadley* was handcuffed and not resisting arrest when he was injured.  In comparison, Suttles' arm was broken while Defendants were in the process of subduing him, after he ran from Defendants and had been unaffected by a taser only seconds earlier.  Suttles was not handcuffed, and even if, as Suttles claims, he had ceased resisting arrest at some point in the seconds between his fall and when his arm was broken, there is nothing in the record to indicate that Defendants understood that Suttles was no longer resisting.

Finally, Suttles did not respond to Defendants' argument that *Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002), supports their qualified immunity defense

in this case.  The officer in *Rodriguez* "grabbed [the] plaintiff's arm, twisted it around [the] plaintiff's back, jerk[ed] it up high to the shoulder and then handcuffed [the] plaintiff as [the] plaintiff fell to his knees screaming."  *Id*. at 1351.  The court explained that "[t]he handcuffing technique used by [the officer] is a relatively common and ordinarily accepted non-excessive way to detain an arrestee" and found that the officer was entitled to qualified immunity, even though the plaintiff's arm was ultimately amputated as a result of his injuries.  *Id*.

The Court notes that *Rodriguez* tends to disprove Suttles' contention that Restrepo should have known that his use of the kimura maneuver to secure Suttles' arm behind his back would violate the Fourth Amendment.  At a minimum, this case shows lack of "fair warning" to Restrepo that his conduct would be unlawful.

Based on the foregoing analysis, the Court finds that Suttles has not provided apposite clearly established law as necessary to overcome Defendants' qualified immunity defense.  This is an additional, independent reason for the Court's finding that Defendants are entitled to qualified immunity with respect to Suttles' excessive force claim.  Accordingly, the Court **GRANTS** Defendants' Motion as to Count IV of the Complaint.

### 3.    State Law Claims (Count VI)

Suttles argues that Defendants are liable for assault and battery under Georgia law as a result of the allegedly unlawful search of his person and use of excessive force against him in connection with the December Arrest.[9]

Defendants seek summary judgment on Suttles' state law claims on official immunity grounds.  They argue that Suttles cannot show the specific intent to cause harm necessary to rebut the defense.

Suttles responds that the requisite intent can be inferred from the facts, including his assertions that Defendants fabricated the jaywalking charge, Restrepo used a restraint technique that he knew was "substantially likely" to break Suttles' arm and when Defendants learned that Suttles' arm was broken, they responded that their actions were "supposed" to hurt.  Suttles Br. at 25, ECF No. 65.

Under Georgia law, "[t]he doctrine of official immunity . . . protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or

---

[9] Suttles does not elaborate on his claim regarding the allegedly illegal search other than to state that Butler subjected him to such a search, and Butler had "done the same thing months earlier."  Suttles Br. 25, ECF No. 65.  The Court therefore finds that Suttles has waived this part of his claim. *See Clark*, 544 F. App'x at 855; *Hamilton*, 680 F.3d at 1319.

corruption."[10]  *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).  The bar for

proving the requisite intent or malice is high.

> In the context of official immunity, actual malice requires a deliberate
> intention to do wrong and denotes express malice or malice in fact.
> Actual malice does not include implied malice, or the reckless
> disregard for the rights and safety of others.  A deliberate intention to
> do wrong such as to constitute the actual malice necessary to
> overcome official immunity must be the intent to cause the harm
> suffered by the plaintiffs.  Likewise, the phrase actual intent to cause
> injury has been defined in a tort context to mean an actual intent to
> cause harm to the plaintiff, not merely an intent to do the act
> purportedly resulting in the claimed injury.

*Selvy v. Morrison*, 665 S.E.2d 401, 404–05 (Ga. Ct. App. 2008).  Where there is no

evidence in the record of malice or an intent to injure, summary judgment on the

basis of official immunity is proper.  *See Cameron*, 549 S.E.2d at 344.

Here, Suttles' claim turns on whether Defendants intended to break Suttles'

arm and not on whether Defendants intended to unlawfully arrest him.

Consequently, Suttles must show that Defendants acted with the deliberate intent

to specifically break his harm.  Yet, the record is devoid of such evidence.

Butler's statement—that "it's supposed to hurt"—made in response to

Suttles' cry that his broken arm hurt does not provide the requisite intent.  The

statement was made by Butler, not Restrepo, who broke Suttles' arm.  Indeed,

---

[10] Suttles does not dispute that Defendants' actions were discretionary in scope.

Suttles argues only that "a jury could find the intention to do wrong" here.  Suttles Br. 25, ECF No. 65.  That is not enough to defeat Defendants' official immunity defense.

Accordingly, the Court finds that Defendants are entitled to official immunity with respect to Suttles's state law claims and therefore **GRANTS** their Motion as to Count VI of the Complaint.

## III.    <u>CONCLUSION</u>

In sum, the Court finds that Defendants are entitled to qualified immunity on Suttles' Fourth Amendment unlawful seizure and excessive force claims and official immunity on Suttles' state law claims related to the December Arrest.  As a result, the Court **GRANTS** Defendants' Motion (ECF No. 57) as to Counts III, IV and VI of the Complaint.

**SO ORDERED** this 29th day of September, 2021.

**J. P. BOULEE**
United States District Judge